UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

ALBERTINA DENISE DENT            CASE NO. 19-11185
    DEBTOR                                        CHAPTER 7

CHOICE CREDIT, LLC
    PLAINTIFF

VERSUS                                                    ADV. NO. 19-1041

ALBERTINA DENISE DENT
    DEFENDANT

## MEMORANDUM OPINION

After Albertina Dent filed chapter 7, Choice Credit, LLC, sued to have her debt to it declared nondischargeable under 11 U.S.C. §523(a)(2)(B). The evidence supports a determination that Dent's debt to Choice Credit, LLC ("Choice") is nondischargeable.

## FACTS AND PROCEDURAL HISTORY

Debtor Albertina Dent applied by telephone for an unsecured loan from Choice in November 2016. A former Choice employee, Crystal Whitehead, took Dent's request by telephone, and after a time, Dent was notified by telephone that her loan was approved. Dent reported to Choice's place of business to sign the application papers and promissory note, after which she was given a check representing the loan proceeds. Dent's completed application,[1] the accuracy of its contents verified in a separate document,[2] recited that she had no payday loans and no dependents.

---

[1] Loan application (Plaintiff's Exhibit 1).

[2] Loan application verification (Plaintiff's Exhibit 2).

After Dent defaulted on the loan, Choice obtained a default judgment against her for $3,036.35 plus interest, attorneys fees and costs, less a small credit for prior payments.[3]

Debtor filed chapter 7 on October 9, 2019, and Choice timely sued her for a declaration that its debt was not dischargeable. Choice's complaint alleged that Dent made two misstatements to obtain the loan: (1) she failed to disclose on the loan application that she had three dependents; and (2) she had not disclosed that she had outstanding payday loans.[4] Choice's complaint flatly declared that it would not have loaned the money to Dent had it known she was liable for outstanding payday loans when she applied for the loan. It more cautiously alleged that it "may not have made the loan at issue herein or may not have made said loan in the same form had it known that Albertina Dent had dependents."

Choice claims to have learned of Dent's false statements during her examination at the meeting of creditors held pursuant to 11 U.S.C. §341. Choice's questions to Dent focused on discovering discrepancies between information Dent gave to the lender in the loan application and Dent's schedules and statements, no doubt to determine whether Choice had a basis for challenging the dischargeability of its claim against Dent.

Choice's lending strategy is not uncommon in this district but poses risks for both lenders and unwary borrowers. Borrowers taking advantage of a less formal telephone application process risk having a debt declared dischargeable if they have been less than scrupulous in providing their financial information during the more casual loan application process. In contrast, lenders who do business with less creditworthy borrowers may be tempted to conduct a cursory investigation, if any, of a prospective borrower's finances and credit history, reassured by

---

[3] Judgment of Baton Rouge City Court in Case No. 17-05197 (Plaintiff's Exhibit 4).

[4] Complaint [P-1], ¶¶ 5, 6.

the prospect of prevailing in a nondischargeability action should the borrower later seek relief in bankruptcy without having enumerated all her debts or disclosing information that the creditor may later claim bore on its decision to extend credit. Both parties face risks: incautious debtors may be left with a nondischargeable debt while eager lenders that fail to investigate after learning of "red flags" in a borrower's application risk having their debts discharged.[5]

Thus, one of Choice's claims fails for its lack of diligence in investigating discrepancies between loan applications Dent made only months apart. However, its second claim is more successful.

## ANALYSIS

Choice relies on Bankruptcy Code section 523(a)(2)(B), making debts nondischargeable "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such...credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive…"

Dent's loan application is a written statement respecting her financial condition. Resolution of Choice's claims depends on whether it was false, whether the falsity was material, whether

---

[5] *See Matter of Osborne,* 951 F.3d 691, 698 (5th Cir. 2020 ) (citing *Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993) (In deciding whether a creditor's reliance was reasonable, the court should consider whether there were any "red flags" that would signal that investigation was needed.)).

Choice relied on it, whether that reliance was reasonable and whether Dent intended to deceive Choice.

### I. Dent's Alleged Misrepresentation about her Dependents was not Material and Choice Did not Reasonably Rely on it.

Melissa Medlin, Choice's operations supervisor, questioned Dent about her debts at the chapter 7 meeting of creditors. Dent's answers to the questions, which are set forth in the meeting transcript admitted into evidence,[6] are the basis for part of the relief Choice seeks.

Dent's application did not disclose that she had any dependents, a statement Dent verified by signing the application verification. Dent in fact had three young sons when she borrowed from Choice in November 2016.[7] Although that omission may have been problematic had the parties not done business before,[8] Dent recently had dealt with Choice and given it information inconsistent with her November 2016 loan application. Accordingly, Choice cannot reasonably have relied on it.

The trial evidence revealed that Dent borrowed an undisclosed sum from Choice on May 24, 2016, that she had repaid before the November 2016 transaction.[9] According to Medlin's testimony, Dent's earlier loan application, which was not offered into evidence, disclosed that she had one child. The inconsistent information in the two loan applications should have prompted Choice to delve further into Dent's personal information and finances—if

---

[6] Transcript of December 20, 2019 meeting of creditors (Plaintiff's Exhibit 5) (hereafter "341 Transcript").

[7] 341 Transcript, p. 34. One of the sons received Supplemental Security Income (SSI) of $660. *Id.*

[8] Choice never proved the difference Dent's having three children would have made in its decision to extend credit. One of the children received SSI, though the application does not indicate whether Choice knew of that or that the payments were included in Dent's net income on the application.

[9] Choice's witness disclosed the prior transaction only after the trial judge inquired about earlier dealings between the parties, though Plaintiff's Exhibit 1, the loan application, revealed that the parties had done business before.

they were indeed material to its decision to extend credit.[10] Its failure to do so supports a finding that the information was not material to Choice's decision.

As the Fifth Circuit has noted,

> In *In re Coston*, [the Fifth Circuit] recognized reasonable reliance is determined by the "totality of the circumstances." [It] set forth three factors, among other things, a bankruptcy court may consider in assessing the reasonableness of a creditor's reliance under § 523(a)(2)(B). First, the court can look to whether "there had been previous business dealings with the debtor that gave rise to a relationship of trust." Second, the court can consider "any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate." Third, the court can ask if "even minimal investigation would have revealed the inaccuracy of the debtor's representations."[11]

To conclude, by failing to investigate the discrepancy between the two loan applications, Choice did not reasonably rely on information relating to the number of people in the defendant's household in Dent's November 2016 loan application

## II. Dent's Failure to Disclose the Pay Day Loans was Material.

Choice also insists that it would not have loaned Dent any money on November 10, 2016, had Dent disclosed that she remained liable on payday loans.

The list of Dent's creditors on the second page of Plaintiff's Exhibit 1 (Dent's November 2016 loan application) comprised only four creditors, none of them payday loan lenders. But the evidence established that Dent had at least two outstanding payday loans when she borrowed money from Choice in November 2016. Melissa Medlin, Choice's operations supervisor, testified that she learned that Dent had outstanding debts for payday loans when she borrowed

---

[10] A written statement is materially false for purposes of applying section 523(a)(2)(B) if it "'paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.'" *Norris v. First National Bank in Luling (Matter of Norris),* 70 F.3d 27, n. 10 (5th Cir.1995) (quoting *Jordan v. Southeast National Bank (In re Jordan)*, 927 F.2d 221, 224 (5th Cir. 1991), *overruled on other grounds*, *In re Coston*, 991 F.2d 257, 260 (5th Cir. 1993)).

[11] *Matter of Osborne*, 951 F.3d 691, 697–98 (5th Cir. 2020) (quoting *In re Coston*, 951 F.3d at 261).

from Choice in November 2016 only at the meeting of creditors. At the creditors' meeting, Medlin named several of Dent's creditors, asking Dent when she incurred each debt.[12] Dent could not give specific dates on which she took on each debt, explaining first in reference to a payday loan from Check Exchange that she incurred it in 2012 but later acknowledging that she incurred the debt some time before the 2016 flood.[13] Dent explained that she did not let Choice know about the debt because "I wasn't asked."[14] Dent admitted taking on another payday loan debt on an unspecified date, though she estimated it to be sometime in 2012 or 2013, to Payday Today.[15] Again she explained that she didn't disclose the debt to Choice because she wasn't asked.[16]

The defendant insisted that the Choice representative who took her application by telephone in November 2016 did not ask her about payday loans, but she admitted signing the application verification, which recited that she had disclosed on the application all payday loans, among other obligations.

Dent's misrepresentation concerning her payday loans was material because Choice would not have made the loan had she been honest,[17] and Choice relied on her silence in deciding to make its loan.

---

[12] Medlin never identified during the examination the document from which she was reading at the creditor's meeting.

[13] 341 Transcript, p. 63, l. 21 – p. 64, l. 20.

[14] 341 Transcript, p. 64, l. 21 – p. 65, l. 1.

[15] 341 Transcript, p. 69, l. 20 – p. 70, l. 5. In her case in chief, Ms. Dent, *pro se*, sought to distance herself from her answers about the dates of the payday loan transactions, testifying that "I don't remember the actual time frame of when I had those loans."

[16] *Id.*, p. 70, ll. 11–16.

[17] "Silence or concealment as to a material fact can constitute false pretense or a false representation as surely as an overt act." *Town North Nat'l Bank of Longview, Texas v. Biedenharn (In re Biedenharn),* 30 B.R. 342, 346 (Bankr. W.D. La. 1983) (citing *Bank of Miami v. Quintana (In re Quintana),* 4 B.R. 508 (Bankr. S.D. Fla. 1981)).

In contrast to the two loan applications' discrepancy concerning the number of people in Dent's household, no inconsistency in the listing of creditors on Dent's November 2016 application would have been a "red flag" warranting Choice's further investigation. Therefore, its reliance on Dent's misrepresentation that she had no payday loans was reasonable.

The final determination is whether Dent failed to reveal her outstanding payday loans with the intent to deceive Choice. "Intent to deceive may be inferred from the totality of the circumstances."[18] "Reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine to produce the inference of intent [to deceive]."[19]

In contrast to her vehement denial that she had failed to tell Choice that she had three small children, Dent testified only that she was not asked specifically about payday loans during the telephone application process in November 2016. Even assuming Choice did not ask about Dent's dependents, Dent admitted signing the loan application verification reciting that her loan application included all her debts, "including but not limited to…payday loans...."[20] The signed verification also provides, "I understand that the decision to loan me money is based largely upon this application, and failure to fully disclose all my information truly and completely could constitute fraud."[21]

---

[18] *In re Lathers*, 540 B.R. 222, 228 (Bankr. M.D. La. 2015) (citing *Byrd v. Bank of Mississippi,* 207 B.R. 131, 138 (S.D.Miss.1997), citing *In re Jordan,* 927 F.2d 221, 226 (5th Cir.1991) (overruled on other grounds, *In re Coston,* 991 F.2d 257, 260 (5th Cir.1993)).

[19] *Matter of Osborne*, 951 F.3d at 699 (citations omitted).

[20] Loan application verification (Plaintiff's Exhibit 2).

[21] *Id*.

> A borrower's lack of care when signing loan documents evidences a reckless disregard for the correctness of the information in the application, and thus establishes intent to deceive for purposes of applying section 523(a)(2).[22]

Dent's lack of care in signing the loan documents evidences a reckless disregard for truth and supports a finding that she intended to deceive Choice.

For these reasons, Choice carried its burden of proving that Dent intended to deceive it through a material misrepresentation on which Choice reasonably relied.

## CONCLUSION

Choice proved that Dent's debt to it is nondischargeable under 11 U.S.C. § 523(a)(2)(B).

Baton Rouge, Louisiana, July 10, 2020.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[22] *In re Lathers*, 540 B.R. at 228 (citing *In re Williams,* 431 B.R. 150, 155 (Bankr.M.D.La.2010); *In re Butski,* 184 B.R. 193, 195 (Bankr.W.D.N.Y.1993); *In re Coughlin,* 27 B.R. 632, 636 (1st Cir. BAP 1983)).